UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| RICHARD R. QUINT, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1263 (VAB) |
| | : | |
| LAMONT, et al., | : | |
| *Defendants*. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Richard R. Quint ("Plaintiff"), currently confined at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, has filed an Amended Complaint *pro se* under 42 U.S.C. § 1983. Am. Compl., ECF No. 11. Mr. Quint names five individuals as defendants, Governor Ned Lamont, Commissioner Angel Quiros, Warden Robert Martin, Deputy Warden Foote, and Deputy Warden Oles. He also includes, as a sixth defendant, all correctional officers at Corrigan. In addition, Mr. Quint has filed four motions: a motion for preliminary injunction, a motion for class certification, a motion for appointment of counsel, and an ex parte motion for injunction. The individual defendants are named in individual and official capacities. Mr. Quint seeks damages and injunctive relief.

Mr. Quint has styled his Amended Complaint as a class action. As explained below, he cannot bring a class action suit. Thus, the Court considers the claims only as they relate to Mr. Quint.

For the reasons set forth below, all federal law claims in the Amended Complaint are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over Mr. Quint's state law claims.

Mr. Quint may file a second Amended Complaint in accordance with the instructions in this Order. Any new Amended Complaint shall be filed by **January 6, 2022**. Failure to file a second Amended Complaint by that date will result in dismissal of this action with prejudice.

Mr. Quint's Motion for Class Certification [**ECF No. 15**] is **DENIED.** As this action is dismissed, his Motion for Preliminary Injunction [**ECF No. 14**], Motion to Appoint Counsel [**ECF No. 16**], and Ex Parte Motion for Injunction [**ECF No. 18**] are **DENIED** as moot.

If Mr. Quint files a second Amended Complaint that addresses the deficiencies identified in this order, the Court will consider Mr. Quint's motions for injunctions and motion to appoint counsel to be renewed without the necessity of filing new motions on the docket.

## I.     STANDARD OF REVIEW

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.   ALLEGATIONS

Mr. Quint allegedly was transferred to Corrigan on March 18, 2021. Am. Compl. ¶ 11. On June 11, 2021, he allegedly wrote to "warden operations about being a pretrial detainee, being punished 13 times due to lock downs." *Id.* ¶ 12. Mr. Quint considers being confined to quarters during each lockdown to be punishment that cannot be imposed without due process. *Id.*

On June 30, 2021, Governor Ned Lamont issued Executive Order No. 21-1 relating to treatment of incarcerated persons. *Id.* ¶ 13; Ex. C to Am. Compl., at 2–4, ECF No. 11-3 ("E.O. 21-1"). The Order includes several definitions:

  a. "Disciplinary status" means a status in which restrictions are imposed on an incarcerated person due to such person's behavior, either pending or following a disciplinary hearing;
  b. "Extraordinary circumstances" means a serious incident resulting in a lockdown of a substantial portion of a correctional facility;
  c. "General population" means any status other than a restrictive status program;
  d. "Isolated confinement" means confinement of an incarcerated person in a cell, alone or with others, for twenty or more hours per day;
  e. "Prolonged isolated confinement" means isolated confinement for more than fifteen consecutive days or more than thirty days in any sixty-day period . . . .

E.O. 21-1 at 3.

Inmates at Corrigan allegedly have been confined to isolated confinement 118 times since Mr. Quint arrived. Am. Compl. ¶ 14. Mr. Quint alleges that Executive Order 21-1 created a liberty interest for inmates not to be confined in their cells for more than 20 hours per day. *Id.* ¶ 15.

The majority of the lockdowns allegedly were caused by staff shortages. *Id.* ¶ 18. For example, when staff allegedly were called from their duties to take an inmate to the hospital, the facility allegedly went on lockdown. *Id.* Many of the lockdowns allegedly caused inmates to be confined in their cells for over 22, if not 24, hours per day. *Id.* ¶ 19.

Mr. Quint allegedly has kept a log of the days the facility was on lockdown and alleges that he was held in isolated confinement for 72 days in 2021[1] and 59 days in 2022.[2] *Id.* ¶ 20. As support for his claim, Mr. Quint attached to the Amended Complaint an unsworn "affidavit" from Inmate Charles Richmond listing the lockdown dates and times between May 14, 2022, and September 5, 2022. ECF NO. 11 at 13-17. Some of inmate Richmond's dates differ from Mr. Quint's dates.

Mr. Quint alleges that defendants Martin, Foote, and Oles have violated departmental directives by failing to enforce rules regarding employee responsibility and have circumvented Executive Order 21-1 by instituting a lockdown for "every little thing" instead of "extraordinary circumstances." *Id.* ¶ 24.

---

[1] The listed dates in 2021 are 4/6, 4/7, 4/8, 4/9, 4/10, 4/16, 4/18, 4/22, 4/25, 4/29, 5/6, 5/8, 5/22, 5/28, 5/30, 6/1, 6/2, 6/3, 6/11, 6/12, 6/13, 6/20, 6/21, 6/24, 6/27, 7/2, 7/13, 7/16, 7/17, 7/18, 7/24, 7/30, 7/31, 8/1, 8/2, 8/4, 8/5, 8/6, 8/8, 8/9, 8/10, 8/13, 8/14, 8/20, 8/22, 8/23, 8/25, 8/28, 8/29, 9/4, 9/8, 9/9, 9/11, 9/12, 9/14, 9/19, 9/22, 9/24, 9/25, 10/1, 10/2, 10/6, 10/8, 10/23, 10/24, 11/20, 12/1, 12/10, 12/18, 12/19, 12/21, and 12/25. ECF No. 11 ¶ 20.

[2] The listed dates in 2022 are 1/7, 1/8, 1/15, 1/16, 5/22, 5/31, 6/3, 6/4, 6/5, 6/6, 6/10, 6/11, 6/14, 6/17, 6/18, 6/22, 6/24, 6/25, 6/26, 7/1, 7/5, 7/8, 7/9, 7/10, 7/16, 7/17, 7/18, 7/22, 7/29, 7/30, 8/2, 8/5, 8/6, 8/7, 8/13, 8/14, 8/15, 8/18, 8/19, 8/20, 8/21, 8/23, 8/26, 8/27, 8/28, 8/30, 9/3, 9/4, 9/8, 9/19, 9/11, 9/12, 9/15, 9/16, 9/20, 9/21, 10/26, 10/29, and 10/30. ECF No. 11 ¶ 20.

**III.     DISCUSSION**

As a preliminary matter, Mr. Quint seeks to file a class action. Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Specifically, Rule 23(a) identifies four prerequisites which must be met before a class action can be certified.

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking to certify a class bears the burden of demonstrating that the requirements of Rule 23 have been met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). As an unrepresented litigant, Mr. Quint can represent only himself. He cannot adequately represent a class of prisoners. *See Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51, 79–80 (S.D.N.Y. Feb. 23, 2016) (denying motion for class certification because *pro se* litigant cannot adequately represent class); *see also* Fed. R. Civ. P. 11(a) (requiring all papers to be signed by the party or an attorney). As Mr. Quint cannot adequately represent a class of inmates, the Court need not address the remaining factors. The request for class certification is denied. The Court will therefore consider the Amended Complaint as asserting Mr. Quint's claims only.

Mr. Quint states that he brings this action for violation of his rights to liberty, to substantive due process, and to not be punished without due process of law under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article first, sections 8 and 9 of the Connecticut Constitution. Within the body of the Amended Complaint, however, he lists his claims as violations of Executive Order 21-1 and prison directives: (1) Warden Martin, Deputy Warden Foote, and Deputy Warden Oles are allegedly in violation of Directive

5

2.17(5)(A) for failing to comply with Executive Order 21-1 and failing to enforce all prison rules, regulations, and directives, ECF No. 11 ¶ 24; (2) Warden Martin, Deputy Warden Foote, and Deputy Warden Oles are allegedly in violation of Directive 2.17(5)(B) for failing to supervise correctional staff, *id.* ¶ 25; (3) Warden Martin, Deputy Warden Foote, and Deputy Warden Oles have allegedly failed to enforce Executive Order 21-1, *id.* ¶ 26; and (4) Commissioner Quiros has allegedly violated all of the above, *id.* ¶ 27.

The Court will address these claims in turn.

**A. Violation of Executive Order 21-1 and Prison Directives**

Another court in this district has reviewed Executive Order 21-1 and found no indication that the Order creates a private right of action. *See Evans v. Barone*, No. 3:22CV00074 (SALM), 2022 WL 408920, at *5 (D. Conn. Feb. 10, 2022). This Court agrees with that determination. Thus, Mr. Quint cannot state a plausible claim for violation of Executive Order 21-1.

Mr. Quint also asserts claims for violation of prison directives. Although the Second Circuit has not yet determined whether violation of a prison directive supports a cause of action under section 1983, other courts considering the issue have held that it does not. *See Osborne v. Kauffmann*, No. 84 Civ. 3369-CSH, 1985 WL 232, at *4 (S.D.N.Y. Jan. 30, 1985) ("Plaintiff has cited no precedent, and my research has not uncovered any authority, for the proposition that violation of a Bureau of Prison Policy Statement gives rise to a private cause of action for one injured by that violation."); *see also Dickerson v. Jordan*, 34 F. App'x 962, 962 (5th Cir. 2002) ("An allegation that prison officials failed to follow prison policy, without more, does not state a constitutional cause of action." (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986))); *Berry v. Sidwell*, No. 1:14-cv-01405-TWP-TAB, 2014 WL 4988014, at *2 (S.D. Ind. Oct. 6, 2014) (holding that "violations of prison rules or regulations do not give rise to a private

cause of action" and prison rules do not create federal rights the violation of which is cognizable under section 1983); *Ward v. Hammond*, No. Civ.A CCB-03-3682, 2007 WL 1073700, at *3 (D. Md. Mar. 30, 2007) ("Violations of prison directives do not in themselves give rise to a § 1983 claim"). This Court agrees that violation of prison directives does not give rise to a claim cognizable under section 1983.

Thus, Mr. Quint's claims that the defendants have violated Executive Order 21-1 or prison directives are not cognizable in this action and are dismissed under 28 U.S.C. § 1915A(b)(1).

The Court will consider whether the alleged violations support Mr. Quint's constitutional claims identified in the introduction to the Amended Complaint.

### B.  The Fifth and Eighth Amendment Claims

The Eighth Amendment applies only to sentenced inmates. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (noting that the Eighth Amendment affords protection for sentenced prisoners); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (noting that claims of sentenced prisoners are cognizable under the Eighth Amendment while claims of unsentenced prisoners are cognizable under the Fourteenth Amendment).

Additionally, the Due Process Clause of the Fifth Amendment applies to federal, not state, inmates. *See Jackson v. Walker,* No. 3:22-CV-1051 (OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009)). Mr. Quint contends that the actions of the Defendants violated his rights under the Fifth and Eighth Amendments to the United States Constitution. Mr. Quint alleges, however, that he was a pretrial detainee at all times relevant to this action.

7

As a pretrial detainee in a state facility, Mr. Quint cannot state a cognizable claim under the Fifth or Eighth Amendment.

Accordingly, Mr. Quint's claims under the Fifth and Eighth Amendments claims are dismissed under 28 U.S.C. § 1915A(b)(1).

### C. The Fourteenth Amendment Claims

The Fourteenth Amendment Due Process Clause protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell*, 849 F.3d at 35 (2d Cir. 2017).

A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways: he can show that the defendants were deliberately indifferent to the conditions of his confinement, or he can show that the conditions are punitive. *Id.* at 34 n.12.

To establish a deliberate indifference claim under the Due Process Clause, a pretrial detainee must satisfy two prongs. *Id.* at 29. First, he must show "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.* Second, the detainee must prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Mr. Quint appears to assert Fourteenth Amendment claims as violation of his right to liberty and substantive due process based on both deliberate indifference to his conditions of confinement and allegedly punitive conditions.

The Court will address these potential claims in turn.

### 1. Condition of Confinement

For Fourteenth Amendment claims, the Second Circuit applies the same standard that applies to Eighth Amendment claims in deciding whether conditions of confinement amount to an objective deprivation of the right to due process. *See Darnell*, 849 F.3d at 30. To prevail on a conditions of confinement claim, Mr. Quint must first show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id.* (citations and internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)).

Mr. Quint contends that Executive Order 21-1 created a liberty interest for prisoners to be confined in their cells for no more than 20 hours per day. In doing so, he relies on the language in the Order. The Supreme Court, however, has explicitly disavowed the methodology of identifying state-created liberty interests by focusing on the language of a particular prison regulation instead of the nature of the deprivation. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).

Even though Executive Order 21-1 does not create a protected liberty interest for the purpose of a conditions of confinement claim, prolonged or frequent prison lockdowns may implicate other basic human needs or life necessities. The Supreme Court has recognized that these include "food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise." *Pape v. Cook*, No. 3:20-cv-1324 (VAB), 2021 WL 2186427, at *8 (D. Conn. May 28, 2021) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cnty.*

*Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); and *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

Here, however, Mr. Quint's Complaint does not allege specific facts showing that the Corrigan lockdowns have affected these basic needs. Instead, he merely alleges in general terms that the lockdowns "create atypical and significant hardship on the incarcerated persons . . . in relation to normal incidents of prison life."

Accordingly, Mr. Quint's Complaint has not pled "enough facts to state a claim to relief that is plausible on its face," and the Court will dismiss his condition of confinement claims without prejudice. *Twombly*, 550 U.S. at 570.

### 2. Punitive Conditions

As noted above, pretrial conditions may also violate a detainee's substantive due process rights if they are punitive. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In considering such a claim, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id.* at 538. Absent evidence of an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (alterations in original) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)).

"[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539. Conversely, "if a particular condition or restriction of pretrial detention is reasonably

related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* Legitimate government objectives include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring the detainees' presence at trial," and managing the facility where the detainee is held. *Id.* at 540.

Mr. Quint alleges that the lockdowns are imposed in response to staffing shortages. Thus, they are related to the legitimate goal of safety and security and were not imposed for the purpose of punishment. The lockdowns, although numerous were not of long duration, most lasting only a day. As Mr. Quint alleges that the lockdowns were imposed when the facility was short-staffed, the lockdowns do not appear excessive in relation to the expressed purpose. Thus, Mr. Quint does not plausibly allege a substantive due process claim.

Mr. Quint also asserts a claim for denial of procedural due process in connection with the lockdowns. "Procedural due process requires that government action depriving an individual of substantial interest in life, liberty, or property 'be implemented in a fair manner.'" *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 625 (E.D.N.Y. 2017) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). To state a claim for violation of his right to procedural due process, Mr. Quint must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).

The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a maximum security facility, because prison officials have discretion to transfer

11

prisoners among correctional facilities "for whatever reason or for no reason at all"). Even when a pretrial detainee has not been convicted, the Due Process Clause does not guarantee a "general liberty interest in movement outside of his cell." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (noting "it is not clear from the record whether Mr. Antonelli was a pretrial detainee or a prisoner" and applying both standards); *see also Wrinkles v. Davis*, 311 F. Supp. 2d 735, 739–40 (N.D. Ind. 2004) (explaining that the Constitution "creates no liberty interest in inmates avoiding an institutional lockdown").

Mr. Quint alleges only that during the lockdown he is required to remain in his cell. He is not subjected to enhanced restraints and does not plausibly allege that the conditions in his cell are unconstitutional. Research reveals no cases finding that a pretrial detainee has a right to a hearing before or after a facility lockdown.

Thus, Mr. Quint also fails to state a plausible claim for denial of his right to procedural due process. *Accord Anduze v. City of New York*, No. 21-cv-519 (PGG) (KHP), 2022 WL 4586967, at *20 (S.D.N.Y. Aug. 8, 2022) (defendants were protected by qualified immunity on claim for violation of due process for lack of hearing before enhanced restraints applied to implement court-issued lockdown order because no clearly established law existed guaranteeing such right), *report and recommendation adopted*, 2022 WL 4547420 (S.D.N.Y. Sept. 29, 2022).

Accordingly, all of Mr. Quint's Fourteenth Amendment claims will be dismissed under 28 U.S.C. § 1915A(b)(1).

**D.  The State Law Claims**

Mr. Quint contends that the actions of the defendants violated his rights under Article first, sections 8 and 9 of the Connecticut Constitution. In *Binette v. Sabo*, 244 Conn. 23, 26 (1998), the Connecticut Supreme Court recognized a private right of action for damages under

Article first, section 9 of the Connecticut Constitution for the illegal search and seizure of private homes by police officers. The court emphasized, however, that the decision to recognize a private right of action in that case, "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. The decision to recognize such causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48. The Connecticut Supreme Court has not extended the private right of action under Article first, section 9 to cases filed by prisoners. *See Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199–200 (D. Conn. 2010) (declining to exercise supplemental jurisdiction over claim under Article first, section 9 for forcing pretrial detainee to share cell with convicted inmate and providing inadequate mental health care as novel and undeveloped issue of state law). As the Connecticut Supreme Court has not yet applied section 9 to state prisoners, this Court also declines to exercise supplemental jurisdiction over this claim.

Nor will the Court recognize in the first instance claims for violation of Article first, section 8. *See, e.g.*, *Woolard v. Santiago*, No. 3:19-cv-1256 (VLB), 2020 WL 2079533, at *11 (D. Conn. Apr. 30, 2020) ("This court and the Connecticut Superior Court have routinely declined to recognize a private right of action under Article first sections 8 and 20 of the Connecticut Constitution."); *Richard v. Strom*, No. 3:18-cv-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) ("There is no established private right of action under the religious discrimination, due process or equal protection provisions (Article First §§ 3, 8, and 20) of the Connecticut Constitution.").

Given that these are novel and undeveloped issues of state law—and out of deference to the State as the final arbiter of its own constitution—the Court declines to exercise supplemental jurisdiction over Mr. Quint's state constitutional claims. *See* 28 U.S.C. § 1367(c) ("The district

court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law . . . .").

### IV.  CONCLUSION

For the foregoing reasons, Mr. Quint's federal law claims in the Amended Complaint are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). The Court declines to exercise supplemental jurisdiction over Mr. Quint's state law claims.

If Mr. Quint believes he can state a plausible Fourteenth Amendment claim by addressing the deficiencies discussed above, he may file a second Amended Complaint by **January 6, 2022**. Failure to file a second Amended Complaint by that date will result in dismissal of this action with prejudice.

Any new Amended Complaint must contain specific factual allegations showing how the alleged lockdowns have resulted in sufficiently serious deprivations of a basic human need or life necessity. *See* Part III.C, pp. 8–12, *supra*.

Mr. Quint's Motion for Class Certification [**ECF No. 15**] is **DENIED.** As this action is dismissed, his Motion for Preliminary Injunction [**ECF No. 14**], Motion to Appoint Counsel [**ECF No. 16**], and Ex Parte Motion for Injunction [**ECF No. 18**] are **DENIED** as moot.

If Mr. Quint files a second Amended Complaint that addresses the deficiencies identified in this order, the Court will consider Mr. Quint's motions for injunctions and motion to appoint counsel to be renewed without the necessity of filing new motions on the docket.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of December, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE