UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| RICHARD R. QUINT, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1263 (VAB) |
| | : | |
| LAMONT et al., | : | |
| *Defendants*. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Richard R. Quint ("Plaintiff"), currently confined at Corrigan-Radgowski Correctional

Center ("Corrigan") in Uncasville, Connecticut, has sued officials and employees of the State of

Connecticut and the State's Department of Correction ("DOC") *pro se* under 42 U.S.C. § 1983.

On December 6, 2022, the Court dismissed all claims in Mr. Quint's Amended Complaint

and afforded him an opportunity to file a Second Amended Complaint that complied with

instructions in the Court's Order. Initial Review Order, ECF No. 21 ("First IRO").

Mr. Quint has filed a Second Amended Complaint naming as Defendants nine

individuals—Governor Ned Lamont, Commissioner Angel Quiros, Warden Robert Martin,

Deputy Warden William Foote, Deputy Warden Oles, Lieutenant Bowers, Counselor King,

Lieutenant Pierson, and Warden Brunelle—and all correctional officers at Corrigan. The

Defendants are named in their individual and official capacities. Mr. Quint seeks damages and

injunctive relief. Second Am. Compl., ECF No. 24 ("SAC").

## I.    STANDARD OF REVIEW

Under section 1915A of title 28 of the United States Code, the court must review prisoner

civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails

to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Because Mr. Quint is proceeding *pro se*, the Court "must liberally construe his pleadings, and must interpret his complaint to raise the strongest arguments it suggests." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and sufficient facts to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.   FACTUAL BACKGROUND

Mr. Quint allegedly was transferred to Corrigan from Bridgeport Correctional Center on March 18, 2021. SAC ¶ 1.[1] On June 11, 2021, he allegedly wrote to "warden operations about being a pretrial detainee, being punished 13 times due to lock downs." *Id.* ¶ 2. Mr. Quint

---

[1] Unless otherwise noted, paragraph numbers refer to Section V of the Second Amended Complaint.

considers being confined to quarters during each lockdown to be punishment that cannot be imposed without due process. *Id.*

Governor Lamont issued Executive Order No. 21-1 relating to treatment of incarcerated persons. *Id.* ¶ 3. The Order includes several definitions:

> A. "disciplinary status" means a status in which restrictions are imposed on an incarcerated person due to such person[']s behavior, either pending or following a disciplinary hearing.
> B. "Extraordinary Circumstances" means a serious incident resulting in a lockdown of a substantial portion of a correctional facility.
> C. "Isolated Confinement" means confinement of an incarcerated person in a cell, alone or with others, for twenty or more hours per day[,] which has been increased to 19½ hours a day.

*Id.*

Mr. Quint believes that the Executive Order and Bill No. 459 create a liberty interest to be out of his cell for at least 4½ hours per day. *Id.* ¶ 4. He alleges that the excessive number of lockdowns imposed on him at Corrigan have caused him to become extremely depressed and have affected his will to live. *Id.* ¶ 7. Mr. Quint denies being suicidal but alleges that "his will to live is just not there at times from the depression brought on by not being able to socialize and leave his cell." *Id.*

Mr. Quint alleges that he is fifty-seven years old and has serious physical injuries that have become worse because of the lockdowns. *Id.* ¶ 8. He allegedly does not want to leave his bed for days at a time. *Id.*

The majority of the lockdowns allegedly were caused by staff shortages. *Id.* ¶ 10. For example, when staff allegedly were called from their duties to take an inmate to the hospital, the facility allegedly went on lockdown. *Id.* Mr. Quint alleges that if the Court were to consult the list of dates for alleged lockdowns for one or two shifts, it would see that inmates were denied at least two hours of out-of-cell time each day. *Id.* ¶ 11.

Mr. Quint allegedly has kept a log of the days he was confined to his cell because the facility was on lockdown. *Id.* ¶ 12. He alleges that he was held in isolated confinement for 70 days in 2021[2] and 93 days in 2022.[3] *Id.* ¶ 12.

Mr. Quint alleges that Defendants Martin, Foote, and Oles have violated departmental directives by failing to enforce rules regarding employee dependability and responsibility and have circumvented Executive Order 21-1 by permitting the facility "to be put on lockdown for things that are not extraordinary circumstances." *Id.* ¶¶ 17–18.

Mr. Quint alleges that, when he was transferred to New Haven Correctional Center ("New Haven"), he was allowed out of his cell for only one hour per day. *Id.* ¶ 21. This practice was allegedly Warden Brunelle's policy for the housing unit. *Id.*

Mr. Quint alleges that when he gave his initial Complaint to Counselor King to copy before sending it to the court, she allegedly removed affidavits from seven inmates from the Complaint. *Id.* ¶ 22. She allegedly refused to return the Complaint to Mr. Quint until Deputy Warden Oles approved the return. *Id.* Mr. Quint alleges that Deputy Warden Oles ordered the removal of the affidavits from the Complaint. *Id.*

Warden Martin, Deputy Warden Foote, and Deputy Warden Oles allegedly ordered Counselor King to issue Mr. Quint a false disciplinary report for interfering with safety and

---

[2] Although Mr. Quint alleges that there were 76 lockdown in 2021, he lists only 70 dates in 2021: 4/6, 4/7, 4/8, 4/9, 4/10, 4/16, 4/18, 4/22, 4/25, 4/29, 5/6, 5/8, 5/22, 5/28, 5/30, 6/1, 6/2, 6/3, 6/11, 6/12, 6/13, 6/20, 6/24, 6/27, 7/2, 7/13, 7/16, 7/18, 7/24, 7/30, 7/31, 8/1, 8/2, 8/4, 8/5, 8/6, 8/8, 8/9, 8/10, 8/13, 8/14, 8/20, 8/22, 8/23, 8/25, 8/28, 8/29, 9/4, 9/8, 9/9, 9/11, 9/12, 9/14, 9/19, 9/22, 9/24, 9/25, 10/1, 10/2, 10/6, 10/8, 10/23, 10/24, 11/20, 12/1, 12/10, 12/18, 12/19, 12/21, and 12/25. SAC ¶ 12.

[3] The listed dates in 2022 are 1/7, 1/8, 1/15, 1/16, 5/22, 5/31, 6/3, 6/4, 6/5, 6/6, 6/10, 6/11, 6/14, 6/17, 6/18, 6/22, 6/24, 6/25, 6/26, 7/1, 7/5, 7/8, 7/9, 7/16, 7/17, 7/18, 7/22, 7/29, 7/30, 8/2, 8/5, 8/6, 8/7, 8/13, 8/14, 8/15, 8/16, 8/18, 8/19, 8/20, 8/21, 8/23, 8/26, 8/27, 8/28, 8/30, 9/3, 9/4, 9/8, 9/10, 9/11, 9/12, 9/15, 9/16, 9/20, 9/21, 9/23, 9/24, 10/20, 10/21, 10/26, 10/29, 10/30, 10/31, 11/5, 11/6, 11/11, 11/14, 11/15, 11/16, 11/17, 11/19, 11/24, 11/29, 11/30, 12/5, 12/6, 12/7, 12/8, 12/9, 12/10, 12/11, 12/12, 12/13, 12/14, 12/15, 12/17, 12/18, 12/19, 12/24, 12/25, and 12/26. SAC ¶ 12.

security in retaliation for exercising his right of access to the court. *Id.* ¶ 23. Lieutenant Bowers allegedly ordered Mr. Quint placed in restrictive housing ("RHU") pending disposition of the disciplinary report. *Id.* ¶ 24. Mr. Quint alleges that Lieutenant Bowers violated his due process rights by failing to interview him before signing the RHU placement order. *Id.* Mr. Quint allegedly remained in RHU for twelve days before he was found not guilty of the disciplinary charge. *Id.* Mr. Quint alleges that his RHU placement violated Bill 459 because it was not the least restrictive way to house him pending the disciplinary hearing. *Id.*

Mr. Quint alleges that Deputy Warden Oles ordered the mail room to open legal mail addressed to Mr. Quint from court reporters and to return the audio CDs of the transcripts, citing safety and security reasons, even though Mr. Quint had a CD player in his cell on which he could listen to the recording. *Id.* ¶ 26.

Mr. Quint alleges that Lieutenant Pierson, as disciplinary coordinator and RHU unit manager, did not review the disciplinary report or RHU placement order to determine whether Mr. Quint posed a serious threat to the facility to justify RHU placement. *Id.* ¶ 27. Lieutenant Pierson allegedly did not put Mr. Quint in a handicap cell in RHU for six days. *Id.* Lieutenant Pierson also allegedly denied Mr. Quint's request to smudge or make individual daily prayers. *Id.*

## III.   DISCUSSION

Mr. Quint does not include a section in the Second Amended Complaint listing his legal claims. Instead, he refers to his claims throughout his statement of facts. The Court notes the following claims: (1) the lockdowns permitted by Defendants Martin, Foote and Oles constitute punishment in violation of Mr. Quint's right to substantive due process, *id*. ¶ 5; (2) the lockdowns subjected Mr. Quint to unconstitutional conditions of confinement, *id*. ¶¶ 7–8;

(3) conspiracy by correctional officers to manipulate schedules and create staff shortages, *id*. ¶¶ 13–15; (4) Defendants Martin, Foote, and Oles have violated and failed to enforce prison directives and the Executive Order, *id*. ¶¶ 16–19; (5) Commissioner Quiros failed to ensure sufficient staffing at all correctional facilities, *id*. ¶ 20; (6) Warden Brunelle established a policy at New Haven requiring Mr. Quint to be confined for 23 hours per day, *id*. ¶ 21; (7) Counselor King removed affidavits from Mr. Quint's Complaint and would not return the Complaint to him without authorization, *id*. ¶ 22; (8) Deputy Warden Oles ordered the affidavits removed from the complaint, *id*.; (9) Defendants Martin, Foote, and Oles ordered that the false disciplinary charge be issued in retaliation for Mr. Quint's accessing the courts, *id*. ¶ 23; (10) Lieutenant Bowers ordered Mr. Quint confined in RHU in violation of Bill 459 and Mr. Quint's due process rights, *id*. ¶ 24; (11) Counselor King issued the false disciplinary report, *id*. ¶ 25; (12) Deputy Warden Oles attempted to deny Mr. Quint access to the courts, *id*. ¶ 26; (13) Lieutenant Pierson violated the Executive Order and Bill 459 by failing to review the RHU order, *id*. ¶ 27; (14) Lieutenant Pierson denied Mr. Quint a handicap cell for six days, *id*.; and (15) Lieutenant Pierson denied Mr. Quint's request to smudge and to make daily individual prayers, *id*.

### A.  Improper Joinder

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016) (citation and quotation marks omitted). The same

6

transaction requirement means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1–4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation and quotation marks omitted). As the Second Circuit has observed in the Rule 13 context,[4] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The mere fact that the same statutes may be at issue in two claims is insufficient to render them sufficiently related so as to support joinder. "Where, as here, plaintiffs' claims under the same statutory framework arise from different circumstances and would require separate analyses, they are not logically related." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012). The Court may "drop a party" that it finds to be misjoined. Fed. R. Civ. P. 21.

In the Initial Review Order, the Court afforded Mr. Quint an opportunity to file a Second Amended Complaint to attempt to state a plausible Fourteenth Amendment conditions of confinement claim if he could show "how the alleged lockdowns resulted in sufficiently serious deprivations of a basic human need or life necessity." First IRO at 14. The Court did not give Mr. Quint leave to add to this action other unrelated claims.

Of the fifteen claims the Court has identified above, only the first five relate to the lockdowns at Corrigan. Mr. Quint's Fourteenth Amendment conditions of confinement claim is

---

[4] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

based on the repeated lockdowns at Corrigan. Claims six through fifteen listed above are unrelated to the lockdowns. They concern confinement at a difference facility, issuance of a disciplinary report, removal of pages from a complaint, retaliation, placement in RHU, denial of a handicap cell, and denial of religious practice. The Court concludes that these claims are misjoined.

Accordingly, claims six through fifteen, will be dismissed without prejudice. If Mr. Quint wishes to pursue these claims, he may do so in separate actions. Defendants Bowers, King, Pierson, and Brunelle will be dismissed from this action.

### B.  Fourteenth Amendment Conditions of Confinement Claim

Of the five remaining claims, claim two is a Fourteenth Amendment conditions of confinement claim, the only claim Mr. Quint was permitted to include in the Second Amended Complaint.

As the Court explained in the Initial Review Order, to state a cognizable Fourteenth Amendment conditions of confinement claim, Mr. Quint must first allege facts showing that the challenged conditions "pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citations and internal quotation marks omitted). The Court dismissed this claim on initial review because Mr. Quint had not alleged specific facts meeting this requirement. *See* First IRO at 9–10.

Mr. Quint now alleges that the lockdowns imposed by Defendants Martin, Foote, and Oles have caused him to "become extrem[e]ly depressed affecting his will to live" and causing him to wish "he could go to sleep and just not wake up." SAC ¶ 7. Mr. Quint alleges that he "is not suicidal though his will to live is just not there at times from the depression brought on by

not being able to socialize and leave his cell." *Id.* Mr. Quint alleges that he has unspecified "underlying serious physical injuries" that have worsened because he "does not want to move out of his bed for days at a time" because of the lockdowns. *Id.* ¶ 8.

In addition to alleging facts showing that the conditions posed an unreasonable risk to his health, Mr. Quint must allege facts showing that "the defendant-official acted intentionally" in imposing the condition, "or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Mr. Quint alleges that the lockdowns were imposed intentionally.

Although Mr. Quint does not allege that he was denied mental health treatment for his claimed depression, or even that he sought mental health treatment, Mr. Quint has plausibly alleged that the Defendants alleged to be responsible for the frequent lockdowns should have known that these lockdowns posed an excessive risk to Mr. Quint's mental health. *See Pyles v. Gaetz*, No. 13-cv-00299-MJR, 2013 WL 1563226, at *4 (S.D. Ill. Apr. 12, 2013) (on initial review, allowing claims to proceed for "deliberate indifference to Plaintiff's health and safety by instituting unjustified, prolonged lockdowns" and "deliberate indifference to Plaintiff's health and safety by instituting unjustified, prolonged lockdowns").

Accordingly, the Court will permit this claim to proceed against Defendants Martin, Foote, and Oles for further development of the record.

### C.  Fourteenth Amendment Substantive Due Process Claim

In his first claim in the Second Amended Complaint, Mr. Quint asserts the same substantive due process claim he included in the Amended Complaint. The Court dismissed this claim on initial review as Mr. Quint alleged that the lockdowns were imposed in response to a

staffing shortage, which is related to the legitimate goal of institutional safety and security. *See First IRO* at 10–11. Mr. Quint reasserts the same claim in his Second Amended Complaint.

Accordingly, Mr. Quint's substantive due process claim is dismissed for the reasons stated in the Initial Review Order.

### D.  The Conspiracy by Correctional Staff Claim

The intracorporate conspiracy doctrine provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008). Although the Second Circuit has not yet applied the doctrine in § 1983 cases, district courts within the Second Circuit have done so. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205–06 (N.D.N.Y. 2009) (dismissing conspiracy claim under intracorporate conspiracy doctrine where all defendants were correctional employees acting within the scope of their employment); *Williams v. Korines*, No. 9:16-cv-1157 (FJS/TWD), 2018 WL 4521204, at *5 n.1 (N.D.N.Y. Sept. 21, 2018) (concluding that intracorporate conspiracy doctrine applied to an inmate's Section 1983 conspiracy claim), *aff'd*, 966 F.3d 133 (2d Cir. 2020).

There is an exception to the intracorporate conspiracy doctrine when individuals are "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282–83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). Simple allegations that the defendants were motivated by personal bias, however, are insufficient to support the exception. *See Vega*, 610 F. Supp. 2d at 205 (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff.").

In his third claim, Mr. Quint expresses his assumption that correctional staff at Corrigan are conspiring to manipulate work schedules and create staff shortages. He references all correctional officers working at Corrigan as defendants for this claim. All defendants were correctional employees and Quint alleges that all defendants were acting under color of state law as he invokes federal jurisdiction "to redress the deprivation [of his rights] under color of state law." Indeed, Mr. Quint alleges that the correctional officers were manipulating work schedules to obtain more overtime hours as permitted under their contracts. SAC ¶ 13.

The Court need not decide whether the intracorporate conspiracy doctrine—or the personal interest exception—apply in this case because Mr. Quint has not plausibly alleged a claim for conspiracy to wrongfully create staff shortages under 42 U.S.C. § 1985. Mr. Quint alleges that officers were trading shifts to increase their overtime hours to increase their pensions. SAC ¶ 15. But he offers no facts suggesting that this alleged conduct was in violation of state or federal law. In fact, he alleges that correction officers bragged about how their union contract expressly allowed them to "manipulate their schedules." *Id.* ¶ 13. Mr. Quint appears to challenge the wisdom and fiscal responsibility of the State for agreeing to such a contract, but this policy objection is not a basis for a conspiracy claim against the Defendant correctional officers.

Accordingly, Mr. Quint's conspiracy claim will be dismissed

### E.  Violation of Executive Order 21-1, and Prison Directives

In his fourth claim, Mr. Quint contends that Defendants Martin, Foote, and Oles violated Executive Order 21-1 and prison directives. Mr. Quint included this same claim in the Amended Complaint. The Court dismissed this claim on initial review because the Executive Order does

not create a private right of action and violation of prison directives does not give rise to a claim cognizable under section 1983. *See* First IRO at 6–7.

Accordingly, this claim is dismissed for the reasons stated in the Initial Review Order.

### F.  The Claims Against Commissioner Quiros and Governor Lamont

The Second Circuit has held that "there is no special rule for supervisory liability," but that "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted). Thus, for deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616. Mr. Quint must allege facts showing that Commissioner Quiros and Governor Lamont acted with deliberate indifference, *i.e.*, that each "personally knew of and disregarded an excessive risk to [Mr. Quint's] health or safety." *Id.* at 619.

In his fifth claim, Mr. Quint states that Commissioner Quiros has failed to ensure sufficient staffing at all correctional facilities. He includes no allegations relating to Governor Lamont other than a statement in his description of the parties that Governor Lamont should ensure that his orders are followed. Both Commissioner Quiros and Governor Lamont are high-ranking officials.

Mr. Quint alleges in conclusory fashion that Commissioner Quiros failed to ensure sufficient staffing in all correctional facilities. He alleges no facts showing that Commissioner Quiros was informed of the staffing issues at Corrigan and their effect on Mr. Quint's mental and physical condition. Thus, there are no facts showing that Commissioner Quiros knew of, and

disregarded, a substantial risk to Mr. Quint. Similarly, Mr. Quint alleges no facts suggesting that Governor Lamont was aware of the alleged lack of compliance with the Executive Order.

As Mr. Quint fails to allege facts suggesting that Commissioner Quiros and Governor Lamont had a subjective knowledge of risk to Mr. Quint, he fails to state cognizable claims against them.

Accordingly, all claims against Commissioner Quiros and Governor Lamont will be dismissed under 28 U.S.C. § 1915A(b)(1).

## IV.   CONCLUSION

Claims Six though Fifteen are **SEVERED** and **DISMISSED** without prejudice as misjoined in this action. Claims One, Three, Four, and Five are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The case will proceed on Claim Two, the Fourteenth Amendment conditions of confinement claim against defendants Martin, Foote, and Oles.

The Court enters the following additional orders.

(1)     **The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Martin, Foote, and Oles, mail a waiver of service of process request packet containing the Second Amended Complaint and this Order to the defendants at the addresses provided by **March 31, 2023**, and report to the Court on the status of the waiver request by **April 14, 2023**.  If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on the Defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk of Court shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Second Amended Complaint on defendants Martin, Foote, and Oles in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **March 31, 2023** and to file a return of service by **April 14, 2023**.

(3)     **The Clerk of Court shall** send the Plaintiff a copy of this Order.

(4)     **The Clerk of Court shall** send a courtesy copy of the Second Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The Defendants shall file their response to the Second Amended Complaint, either an answer or motion to dismiss, by **June 16, 2023**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 13, 2023**. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed by **November 17, 2023**.

(8)     Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The Plaintiff must give notice of a new address even if he is incarcerated. The Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It

14

is not enough to just put the new address on a letter without indicating that it is a new address. If the Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10)    The Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The Plaintiff is advised that the Program may be used only to file documents with the court. As Local Court Rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(11)    The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the Plaintiff.

**SO ORDERED** a Bridgeport, Connecticut, this 10th day of March, 2023.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge